The next case today is United States v. Hermine Rodriguez-Monserrate, appeal number 20-1905 and appeal number 20-1907. Attorney Feldman, please go ahead and introduce yourself for the record now to proceed with your argument. Thank you, Your Honor. Arza Feldman is attorney for the appellant Hermine Rodriguez-Monserrate. Good morning, Counselor. Good morning. Your Honor, other than what's in the briefs, I would like to emphasize this morning two specific issues. First, I would like to discuss the education condition that was imposed upon this defendant. This defendant was required as a condition of supervised release to complete high school. You don't want to start with the appeal waiver? I did not. We can discuss it. I can answer whatever questions. You can tell your argument any way you want, but we don't even get to the conditions, do we, unless we get past the appeal waiver. Well, as to the appeal waiver, Your Honors, it was clear that the court failed to properly interrogate the defendant in his case regarding the waiver of his appeal. It was incumbent upon the court to discuss the appeal waiver and not delegate that to counsel. In this particular case, the defendant initially said he did not understand the appellate waiver. The court then directed counsel to discuss it with him. It was apparently discussed, although we don't know what they discussed. We don't know exactly what was said between counsel and defendant. And it's a defendant's position in this case that the district court had the affirmative obligation to inform the defendant about the consequences of the plea, including the waiver, and ensure that he understood them. This is a defendant who the court was aware had no more than a fourth grade education and dropped out of school by the time he was in seventh or eighth grade after a vocational training program. And certainly under those circumstances, the court had an absolute obligation to make sure that the defendant understood exactly what was occurring here. The enforcement of the waiver in this particular case would affect the substantial rights of the defendant to challenge his sentence. Just so I'm following, your argument is that when the appeal waiver is included in the plea, the fact that the district court, am I right, understood that the defendant plus his counsel had gone over the plea word for word. That's not enough to indicate that the defendant was aware of the plea waiver? Correct. It is our position that it's incumbent upon the district judge himself or herself to make sure that they're satisfied and that this court understands on the record that an appellant has properly waived his right to appeal. Especially when there are, as in this case, some substantial rights that would be available for him to challenge. It's not enough to say to an attorney, because we don't know what was discussed amongst counsel, that's privileged and we don't know, but we do know what's on the record. And we would know if a district court asked some specific pointed questions and if the defendant answered appropriately, then by all means the appellate waiver could be enforced. But in a situation where a district court judge does not properly interrogate a defendant, especially in a situation where we have a defendant of this nature, with all sorts of learning disabilities, and it's clear from the pre-sentence report, has a minimal level of education, I think it would have been quite incumbent upon the district court to make that inquiry in a very substantial manner. Do you have a, what would be your authority that you'd point us to, to say that the district court, that the appeal waiver is unenforceable unless the district court specifically asks and has a colloquy with the defendant about it? I think it's outlined in my briefs. Five minutes remaining. It's in the brief, I can find it, you don't have to. Yeah, it's in the brief, including, you know, reliance on in circuit law for that. I'm puzzled by what you're saying. As I understand it, the court had the prosecutor expressly explained that the plea agreement contained a waiver of appeal and then recited what it was. And then the judge later then asked him, do you understand that you waive and give up your right to appeal? And he said, no. Court then paused and said, let me ask again. There was a conversation with counsel, and then he said, yes, he does understand it. What else is the judge supposed to do at that point? I think that the judge should have explained it to him, your honor. Well, he did. He said, do you understand that if I sentence you according to the terms, conditions, and recommendations, you waive and give up your right to appeal your sentence? And he said, yes, I understand that. So. Well, I think. Tell me what words the judge should have said at that point. I think that there are certainly consequences to the appellate waiver, that he could not waive certain things in his plea, that he could not waive his request for the downward departure, although that was not an issue at the time. There was no discussion about that prior to the waiver. But if those two limitations on the waiver he didn't understand, then how does that hurt him? I'm not clear I understand your question, your honor. Sure. You're reciting two limitations on the waiver that you said the judge should have expressly cited. How does that hurt a defendant when a judge doesn't explain the loopholes in the waiver? Because I think that the judge has an obligation to really clearly explain, especially when a defendant says, I don't understand. You can't delegate that authority to defense counsel. You as a judge, as a district court judge, have an obligation yourself to explain it. The issue is not exactly what he could have explained. I mean, clearly the case law allows for some variance amongst judges in the kind of language that they use. But the key here is that the obligation is on the court, not on the court delegating to it. Well, the court has to be adequately assured that the defendant understands that he's waiving his right to appeal. So by letting the prosecutor explain those rights, asking the defendant if he understands those rights, I'm affected with what Judge Kayotta just asked, what's inadequate about that? Particularly when there seemed to be some confusion at first, and then he went off the record with his attorney to get better explanation, and then he affirmatively stated once the proceeding resumed that he was giving up those rights to appeal. Well, under this court's precedent in Teeter, this court has indicated that the district court must question the defendant specifically about his understanding of the waiver provision and adequately inform him of its ramifications. It's not, again, sufficient for the district court judge to delegate that authority to a defense attorney. And I think that that's the key to this whole issue here, is what did the district court do? I mean, if the district court had explained what a waiver of appeal is to the defendant itself, then maybe we'd be in a different situation, but that's not what's happened here. Am I right in saying that you're saying that the explanation of what a waiver of appeal is cannot be just describing it as a waiver of appeal? It's got to be more than that. Correct. So what more has to be done to describe it beyond saying it's a waiver of appeal? I think that's what Judge Cotter was asking you. Well, certainly the word waiver, I don't think, is something that a layperson can necessarily understand. Well, the court said waive and give up his right to appeal his sentence and judgment in the case. So is give up good enough? Well, I think give up, but what are you giving up? Your right to appeal the judgment and sentence, that's what the court explained he was giving up. Right, but I think it has to be more specific than that. You have the right to not question how many months I give you. You have the right to question whether or not anything was done wrong with respect to your sentence by this court. There are generalized statements that I think can be made that are more specific than simply using things like you're giving up your right to appeal. I don't know that certainly not this defendant would necessarily understand what that means. I think that in plea allocutions and in various other times when judges do advise defendants of giving up certain rights, they have to do it in a very plain language, not necessarily use legalese. And I understand giving up is correct, but I don't know that a defendant necessarily understands what that means to give up the right to appeal. Appeal what? Appeal the sentence and the judgment, but what does that even mean to a lay person? I think a district court has to be more specific in that context. Should I continue on the appeal waiver or may I proceed to the other arguments that I wish to address? Whatever you wish. Thank you, Judge Thompson. With respect, if this court were to agree that the appellate waiver is insufficient, then certainly the defendant here wishes to challenge certain aspects of the sentence, including the condition that he complete high school. Again, as I indicated, this is a defendant who failed the 4th grade three times and left school by the 7th or 8th grade. So in his allocution, it was the defendant who brought up that he wanted to complete his education while incarcerated. Well, he indicated that he would like to complete his education, but again, that was aspirational. Judge, clearly when you're faced with a defendant who has had this kind of educational history, to mandate him to complete high school is setting him up for failure. The 355.3 does allow the district court, as a condition of sentencing, to assist a defendant in educational and vocational training. That's to benefit the defendant so that when he comes out of his supervised release or his sentence, that he's better equipped to not recommit crimes. However, to mandate a defendant who he has no way of knowing if he has the capacity to even complete his education is beyond the scope of what 355.3 would allow the court to do. So if a defendant raises it as an aspirational goal, the court in support of that goal orders it. You're saying that because there was no objection here, that the court plainly erred. Yes, and not only the fact that the defendant set it forth as an aspirational request does not mean the court should have mandated him to complete high school. The court could have indicated that the court wished the government to assist him, to provide him with the means to do that, but to mandate him to complete high school when there's no evidence in this record that this defendant could possibly do that and impose such a condition upon him. He may never get out of supervised release if he doesn't complete high school. So how can a district court do that to a defendant under these circumstances? So if the aspirational goal becomes a fait accompli of inability to do that, you can always modify the conditions. You can move to modify the conditions. Well, I think that goes to the ripeness issue that was raised by the government in its brief. Is this ripe yet for review? Because later on he could modify it. But the issue is that the judgment here explicitly spells out the condition itself. It doesn't talk about the enforcement of that condition or the application of that condition. It specifically says you must complete high school. So it's ripe for review at this point in time, notwithstanding the fact that maybe he could and maybe he couldn't modify it in the future. But at this point, I think that the court could still rule upon it because it is a mandate and it is an improper mandate as far as our position is in this case. Judge Brainard? Well, I just wanted you to touch on the revocation sentence. And if I understand, the appeal waiver does not apply to that. Is that right? Correct. So with respect to the CARES Act argument, you're in agreement that that's not a plain error review? Well, the CARES Act argument is interesting because it's our position that the CARES Act didn't even apply here. I understand that. Your objection to the non-appearance based on the CARES Act, that was not objected to at the time, so that would be on plain error review. Is that right? Correct. But it didn't even apply because the court never got to the second prompt. I mean, if we think about the CARES Act, the CARES Act was intended to remedy a specific situation where defendants could end up... I know your brief well, it's laid out well there. I just wanted to clarify those two points. Thank you. Thank you, Counselor. Thank you very much. Attorney Feldman, please mute your audio and video at this time. Attorney Coleman, if you could introduce yourself on the record for your argument. May it please the court, my name is Robert Coleman. I represent the United States. Good morning. Good morning. Here, the district court did comply with its obligation to bring the appeal waiver provision to defendant's attention and to questions appellant about that particular provision and to ensure that the court had the understanding that the defendant understood the terms of that appeal waiver. As the court indicated, it was asked multiple times. Although the defendant did indicate that he did not understand the first time, the court remedied that by asking again. And in the meantime, permitting defendant as well as his counsel to confer in order to alleviate any concern about the confusion. But there are more provisions than that in the plea colloquy to ensure... Well, since we don't know what he said to his counsel or what his counsel said to him, how can we be assured that there was an adequate explanation when the court took that break? I mean, Tita does seem to suggest that the burden is on the court to do the questioning, doesn't it? Yes, it does, Your Honor. And here, the court, regardless of what was said between counsel, the court did comply with its obligation because the court did bring this specific provision to appellant's attention and also did ask twice. The second time, appellant unequivocally said yes, that he did understand. And that same yes is the yes that he provided to answers throughout the plea colloquy. And there is no other challenge to any other response that the appellant gave as if any of those were invalid, simply because of... ...that you're waving in giving up. Giving up seems pretty colloquial, and most people would understand what giving up means. And sentence seems to be pretty colloquial, so that that's pretty easy to understand also. Judgment, however, judgment of conviction, if you don't say conviction and only say judgment, is that a reasonable explanation? Yes, it is. The teeter indicates that no specific language is required. And here, we're under plain error because there was no objection to this at the hearing either. And as a result, the burden is on appellant to show that there's some controlling case law that indicates that there's an obligation for the court to use particular language or to show that the court violated its obligation. But there is no specific language that's required. So it is true that hypothetically, potentially, some other language may have been useful here. But there's no obligation that the court engage in that, and therefore, there's no plain error here. All right, let me ask you this. By the time the defendant gets to sentencing and there's a pre-sentencing report, the court is pretty much apprised of, like, the contours of the defendant. At the change of plea hearing, you don't have those kinds of explorations and assurances as to the level of competency. And I know the court inquires about drugs, et cetera. But how is the court to know the level of understanding of a defendant if we don't say you need to assume that there may be some minimal deficiencies and explain it in more detail? Here, there was no reason that the court would be aware of that, in particular, as Your Honor indicates. But the counsel never brought, defendant's counsel, that is, never brought any concern to the court's attention either. So there was ample opportunity for that. Counsel was also asked whether he reviewed the terms of the agreement with the defendant. That's another layer of assurance. And there was no objection rendered. If the defense counsel had some concern as to the competency of his client to agree to certain provisions, then that could have been raised at that time. Also, the court asked at the end of the proceeding if there was anything else, and nothing else was raised. So there were a number of assurances here. Could you address the CARES Act issue? And I'll just tell you what is the issue for me. There's obviously an issue whether we're under miscarriage of justice standard with respect to the sentence itself on the conviction insofar as the appeal waiver is good. And there's a plain error question with respect to the revocation. But on the CARES Act question itself, the district court here seemed plainly to be invoking the CARES Act as the authority for having the video appearance, correct? I don't recall that the court mentioned the CARES Act specifically. Well, doesn't it refer to the circumstances of COVID being the reason for this? Yes, that's correct. So it stands to reason that the invocation of it was not as if it was at the prompt of the defendant, a desire to waive appearance. The issue only came up by virtue of the district court. Do I have that wrong? You have that correct. Now, however, there's one wrinkle to it. The court brought it up before the hearing and indicated that an appellant could file something if he wanted to proceed by video. About four minutes remaining, four minutes. Appellant filed what was titled a motion before the hearing, although it was prompted by the court, and indicated in writing that after conferring with counsel and being appraised of his rights, knowing his right to appear physically in person, that he was waiving that right and that he wanted to proceed by video. And that's all what would be required if you invoke the CARES Act as the procedure that you would ideally want to have happen in order to take advantage of that CARES Act authority to waive, correct? That is correct as to the revocation. So the question that I am concerned about is, the CARES Act seems to limit the authority to invoke that process for providing a means by which the waiver of the right to appear for the revocation proceeding can occur. That's contingent on a finding about delay and the effect of delay. And as I read the record, there's no finding at all made here. I do not believe that there is a requirement regarding the impact of a delay as to the revocation hearing in the CARES Act. I agree that there is one for certain other proceedings, but not as to the revocation hearing specifically. Your understanding is that for that part of the CARES Act, it's just enough to ensure that there was the requisite waiver? Correct. Okay. And then just help me through the part where you are agreeing that the finding needs to be made, which is with respect to the sentence, and recognizing that we might be on miscarriage of justice standard assuming the appeal waiver, putting that aside for a second. If we just looked at it through the plain error lens, why isn't the absence of that finding clearly and obviously an error? Because the court did engage in a specific analysis, much of which pertain to, or some of which pertain to this particular defendant and much of which pertain to the circumstances of the pandemic at the time. So the court, I agree, the court did not do a specific interest of justice analysis or determine that, but the court did go through thoroughly and indicate that the pandemic was posing health risks, that the defendant here was, I believe, in Mississippi, housed in Mississippi at the time, and that that would pose a health risk. But the relevant question isn't whether there's a risk from COVID that warrants the need for special protocols. I thought the whole point of that finding is to explain why we don't simply just hold off to see if things get better so the person can appear. And absent some concern that the person would be staying in prison longer than he needs to or something like that, there's no reason to go forward with a non-appearance. There's no finding on that score, you agree, right? I do agree with that. So just on that point, you can answer what you want to say on that, but just before you wrap up, how do you think about prejudice in the event that there is a clear and obvious error under the CARES Act? If the CARES Act is invoked and it's the prompt for the non-appearance, which seems to me is a fair reading of this record, what is the right prejudice analysis in that setting? To me, it's complicated by the fact there is a waiver. So it's not as if the defendant doesn't consent. The defendant did consent, but he's consenting to a process in which the condition for invoking the process seems not to have been bound to have been met by the district court. So how does the prejudice analysis work there in the government's view? I believe the first step would be under the Manifest Injustice Standards. That's time. Your Honor, if I might complete the question. Please do. Thank you. Under the Manifest Injustice Standard, there is some of the concerns. You mean the Teeter Standard if the waiver of appeal applies? Yes, exactly. I understand how the argument runs. Imagine we're on plain error and that for some reason the appeal waiver doesn't apply. How does the prejudice under the third prong of plain error apply in the circumstance I'm describing? Here, if applying that prejudice standard, there would be no prejudice to find because the court could have made more specific interests of justice standard findings, particularly because the appellant here was requesting a sentence only 11 months further than time served, and the sentence was being rendered here in August 2020. So given the uncertainty at that time, the great uncertainty as to the extent of the pandemic, but also to when the defendant might be scheduled. If I disagreed with that and I thought, let's say, there's at least a chance the district court, if it knew it had to make that finding, would have realized it would have been fine to put it off longer before having a non-appearance. Is it relevant to the prejudice inquiry that the nature of the request he was making for leniency is just the kind of request that physical presence might aid? No, it's not relevant here because there's no indication that the sentence would have been any lesser. There's no proffer of information that the appellant would have submitted had he been there in person. There's no reason to believe that the court would have offered a lower sentence in any regard. Just last turn on this. I thought the whole point of the defendant's argument here was that he was essentially asking for mercy and leniency in light of the hardship of his mother. He was, and he was able to. Isn't that the kind of thing that is very hard for us to know whether it would have made a difference if they were eye to eye. And that's the whole point of being in physical presence is that type of argument. It's not a legal argument. It's not a factual argument. It's a human argument. You know, you're seeing me, I'm seeing you. That's the very kind of thing that remote argumentation might not capture. That's what concerns me about saying that that, I mean, I still don't know how to think through prejudice in that type of situation. It would seem like that would be a pretty good candidate for finding we can't know that it wouldn't have made a difference. I agree. We can't know whether it would have made a difference. However, there's one other indication here, which is that defense counsel rested on the memorandum. There was a memorandum also submitted, which is typically submitted in these cases too, a sentencing memorandum. And the counsel rested on the memo. So counsel didn't even make an argument or didn't find it relevant to even make an argument by video. Moreover, the defendant was able to make his mitigation argument by video as well. And the court was able to consider that along with the other factors in arriving at the sentence. Okay. Thank you. Yes. Thank you. Counselor. Thank you. We requested this court affirmed. Thank you. That concludes argument in this case. Counsel for both parties can disconnect at this time. I believe that attorney Coleman's going to stay in the meeting for a later argument today.